NOT DESIGNATED FOR PUBLICATION

No. 115,868

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDWARD C. JOHNSON,
*Appellant*,

v.

KARI BRUFFETT, Secretary of the
Kansas Department for Aging and Disability Services,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed May 12, 2017.
Reversed and remanded with directions.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jessica F. Conrow*, litigation counsel, Kansas Department for Aging and Disability Services, for
appellee.

Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*: Edward C. Johnson appeals from the dismissal of his K.S.A. 2016
Supp. 60-1501 habeas corpus petition for lack of jurisdiction based on the district court's
finding that Johnson's petition was not timely filed. Johnson's sole argument on appeal is
that the district court erred in failing to appoint counsel to represent him at a telephone
hearing scheduled by the court to consider the motion to dismiss filed by the Kansas
Department for Aging and Disability Services (KDADS). Because we agree that counsel
should have been appointed to represent Johnson at the hearing, we reverse the district

court's judgment, direct that counsel be appointed to represent Johnson, and remand the case for further proceedings.

FACTS

Johnson is confined for treatment at the Larned State Hospital under the custody of KDADS, pursuant to the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.* (KSVPA). Although the merits of his claim are not at issue on appeal, the underlying K.S.A. 2016 Supp. 60-1501 petition alleged that staff members of the Sexual Predator Treatment Program (SPTP) unlawfully seized Johnson's personal property, failed to inventory certain seized property, and failed to return some seized property, which Johnson asserts violated his statutory and constitutional rights. As it relates to Johnson's claim that the district court erred in failing to appoint him counsel at the hearing on KDADS's motion to dismiss his property deprivation claims, we find it helpful to summarize the procedural history in chronological order:

March 5, 2013:  Johnson alleged SPTP staff members unlawfully seized personal property from his room. Johnson further alleged he received 10 SPTP Shakedown and Search Reports dated March 5, 2013, later that day.

March 14, 2013:  Johnson alleged he received four SPTP Shakedown and Search Reports dated March 8, 2013, one SPTP Shakedown and Search Report dated March 11, 2013, five SPTP Shakedown and Search Reports dated March 12, 2013, and two SPTP Shakedown and Search Reports dated March 13, 2013.

March 27, 2013:  Johnson filed an internal grievance with the SPTP treatment team, alleging that team personnel seized items of his property, failed to list some of the items seized on the shakedown reports as required by policy, and failed to return all of the items seized from him.

2

<u>April 8, 2013</u>:  Johnson received a response to his grievance from the treatment team, which stated:  "According to Property Officers your lists are complete."

<u>April 11, 2013</u>:  Johnson internally appealed the matter to the SPTP grievance officer.

<u>April 15, 2013</u>:  Petitioner alleged he was moved to Isaac Ray North 3 (a more restrictive SPTP Unit) and additional personal property was seized.

<u>April 19, 2013</u>:  Johnson received the grievance officer's response, which stated: "Treatment team is supported in list received are completed by property officers. If you have missing or broken items you must use property claim form and have receipt for item."

<u>April 22, 2013</u>:  Johnson appealed the grievance officer's response to the SPTP administrative program director.

<u>May 20, 2013</u>:  Johnson alleged that although this was the deadline for the administrative program director to have responded to his appeal of his grievance, he never received a response from the administrative program director.

<u>June 19, 2013</u>:  Johnson mailed his petition for writ of habeas corpus, motion to proceed *in forma pauperis*, and motion for appointment of counsel to the court for filing. The pleadings were file stamped by the court on June 26, 2013.

<u>July 14, 2013</u>:  Johnson mailed to the clerk of the court documentation supporting exhaustion of his administrative remedies, including copies of the grievances and a letter expressing that he was unable to provide a copy of the grievance appeal to the administrative program director of the SPTP because the grievance appeal was never returned to him. These documents were filed stamped by the court on July 19, 2013.

<u>July 24, 2013</u>:  The court issued a form order verifying that the habeas corpus petition had been filed, that the court would conduct a review pursuant to K.S.A. 60-1503, and that Johnson had exhausted all administrative remedies.

<u>June 5, 2014</u>:  The court issued an order stating that in order to survive summary dismissal, Johnson must ask the SPTP administrative program director about the receipt and status of his grievance appeal and then submit an affidavit detailing efforts to exhaust administrative remedies and his efforts to pursue a property claim.

<u>July 9, 2014</u>:  The court issued an order identical to the order it issued on June 5, 2014.

<u>August 6, 2014</u>:  Johnson mailed to the clerk of the court the requested affidavit which outlined the history of his unanswered grievance procedure and reiterated that he had submitted a written appeal of his grievance to the Administrative Program Director of SPTP on April 22, 2013, but never received a response. The affidavit was file stamped by the court on August 13, 2014.

<u>August 14, 2014</u>:  The court issued an order authorizing Johnson to proceed *in forma pauperis*, indicated it was taking Johnson's motion for appointment of counsel under advisement, and noted that a Writ would be issued by separate order. The writ was issued, and the court ordered KDADS to respond.

<u>September 29, 2014</u>:  In lieu of an answer, KDADS filed a motion to dismiss the action, arguing in part that the court lacked subject matter jurisdiction because Johnson failed to file his petition within 30 days after the SPTP action was final, as required by K.S.A. 2016 Supp. 60-1501. In support of the motion, KDADS submitted to the court a letter dated April 30, 2013, from the then-administrative program director, Clifford Voelker. Apparently in response to Johnson's April 22, 2013, internal appeal submitted to him as acting administrative program director, Voelker wrote in the letter that Johnson failed to

attach a copy of the first page of the grievance form that showed responses by the treatment team and the grievance officer; Voelker said he "would need the complete grievance to give an adequate answer" to Johnson's grievance. In its motion to dismiss, KDADS argued that the April 30, 2013, letter signaled the end of the grievance process, which triggered the 30-day deadline before which Johnson had to file his petition under K.S.A. 2016 Supp. 60-1501. Because Johnson's petition was not file-stamped until June 26, 2013, KDADS argued it was 27 days out of time.

December 3, 2014: The court scheduled a telephone hearing on KDADS's motion to dismiss the petition. The court did not appoint counsel to represent Johnson at this hearing.

January 8, 2015: The court held a telephone hearing on KDADS's motion to dismiss. Johnson appeared in person. KDADS appeared through counsel. An employee of Larned State Hospital, Casey Hoffman, testified as a witness. Upon review of the evidence and the testimony of witnesses, the court granted KDADS's motion to dismiss for lack of subject matter jurisdiction because Johnson failed to file his petition within 30 days of the agency's final determination.

ANALYSIS

As his only issue on appeal, Johnson argues the district court unlawfully deprived him of his right to be represented by counsel at the January 8, 2015, telephone hearing on KDADS's motion to dismiss his habeas petition.

*Statutory right to counsel*

Johnson first argues that he had a statutory right to counsel under the KSVPA. The KSVPA governs an involuntary civil commitment process for the "potentially long-term

5

control, care and treatment of sexually violent predators" in a separate environment for the protection of the public. K.S.A. 2016 Supp. 59-29a01(a). If a person is determined to be a sexually violent predator under the act, he or she is committed "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2016 Supp. 59-29a07(a). The KSVPA provides for annual reviews to reexamine the mental condition of the confined person, which process may also be used to seek transitional release from the program. K.S.A. 2016 Supp. 59-29a08. A confined person is entitled to the assistance of counsel at all proceedings conducted under the KSVPA. K.S.A. 2016 Supp. 59-29a06(b).

Johnson contends that the right to counsel at all KSVPA proceedings should apply to the hearing on KDADS's motion to dismiss his K.S.A. 2016 Supp. 60-1501 action. But the KSVPA does not provide a right to counsel to Johnson in this context. By its terms, that act only mandates the right to counsel "[a]t all stages of the proceedings under K.S.A. 59-29a01 et seq." K.S.A. 2013 Supp. 59-29a06(b). Johnson's claim that his property was not returned to him after a shakedown is not the kind of proceeding that would be resolved under the provisions of the KSVPA, as it does not have bearing on the determination that Johnson is a sexually violent predator or on his continuing mental condition under the annual review process.

Johnson cites two cases to support his position that he should have been provided counsel under the KSVPA: *In re Care & Treatment of Burch*, 296 Kan. 215, 291 P.3d 78 (2012), and *In re Care & Treatment of Zishka*, 51 Kan. App. 2d 242, 343 P.3d 558 (2015). In both of those cases, however, the petitioner sought counsel with regard to an annual review proceeding under the KSVPA, which is unquestionably a proceeding governed by that act. See K.S.A. 2016 Supp. 59-29a08. Moreover, K.S.A. 2016 Supp. 59-29a08(a) explicitly provides the right to representation of counsel at annual review hearings. *In re Care & Treatment of Burch* and *In re Care & Treatment of Zishka* do not support Johnson's position that he is entitled to counsel to represent him in this habeas

corpus petition filed pursuant to K.S.A. 2016 Supp. 60-1501 because it is not a proceeding that falls under the terms of the KSVPA. The provisions of the KSVPA did not require the district court to provide Johnson counsel at the hearing on KDADS's motion to dismiss his K.S.A. 2016 Supp. 60-1501 action.

*Constitutional right to counsel*

But Johnson also argues that the district court was required to appoint counsel to represent him at the hearing on KDADS's motion to dismiss as a matter of constitutional due process. In *Merryfield v. State*, 44 Kan. App. 2d 817, 826, 241 P.3d 573 (2010), our court held constitutional principles of due process require the court to appoint counsel for a civilly committed sexual predator filing a K.S.A. 2016 Supp. 60-1501 petition if the claims asserted in the petition are not subject to summary dismissal. Although a motion to dismiss for lack of subject matter jurisdiction is often, by its very nature, a summary disposition based only on application of the law to the facts set forth in the pleading, we must review the record to decide whether the court summarily dismissed Johnson's petition in this case.

On July 14, 2013, a little over 2 weeks after his habeas petition was filed, Johnson mailed a letter to the court asserting that he was unable to provide a copy of the grievance appeal to the administrative program director of the Sexual Predator Treatment Program because the grievance appeal was never returned to him. During the 18-month period during which his petition was pending before the district court, Johnson consistently repeated this assertion. In its motion to dismiss, however, KDADS argued that Johnson's administrative remedies were exhausted on April 30, 2013, which was the date of the letter written by the SPTP acting administrative program director advising Johnson that he was not entitled to any relief related to his grievance.

At the hearing, the court inquired into this factual dispute.

7

"[THE COURT:] [W]hen I looked at this attachment as to the grievance to the treatment team and to the grievance officer, it reflects that the response of the treatment team and grievance officer was returned, and I don't find anything to match that with respect to Mr. Voelker's letter of April 30th, 2013. I know, Mr. Napolitano [counsel for KDADS], the SPTP requires the grievance panel to record or retain copies of grievances, do you believe there is anything within the records of SPTP, if you know, that would reflect that Mr. Voelker's letter was—proof that it was served on Mr. Johnson?

"MR. NAPOLITANO: Your Honor, I am not sure as to any written documentation. . . .

"It is my recollection, and I think if I were in the office my notes would reflect, that I had a conversation with Casey Hoffman and asked her if it was served personally on Mr. Johnson. And it is my recollection that Casey Hoffman said that she served it on or about that April 30th date."

At this point in the hearing, Hoffman—who was in the same room as Johnson during the telephone hearing—was permitted to testify. Due to a glitch in the speakerphone function on the telephone being used at the Larned facility, Johnson was able to hear the *answers* provided by Hoffman but was not able to hear any of the *questions* asked. On the other hand, Napolitano, counsel for KDADS, was able to hear all questions asked and all answers provided.

"THE COURT: . . . Ms. Hoffman, I understand you may not have these records before you.

"MS. HOFFMAN: True.

"THE COURT: But an issue in this case, and particularly as to the motion to dismiss, is whether or not you have any knowledge as to whether Mr. Johnson received correspondence from Mr. Voelker the then acting administrator under date of April 30th, 2013, with respect to a grievance that Mr. Johnson had filed?

"MS. HOFFMAN: Yes, sir. The information was shown to me even today by Mr. Johnson. He questioned me about Mr. Voelker's signature. It is Mr. Voelker's signature. So, I would say, yes, it was served.

"THE COURT: Okay, Do you have any knowledge who may have served that or any recollection?

8

"MS. HOFFMAN: Yes

"THE COURT: What is that?

"MS. HOFFMAN: Myself.

"THE COURT: Okay. Okay. Now, Mr. Johnson, could hear your response just now, but he probably was unable to hear my questions, correct?

"MS. HOFFMAN: Right, because we don't have a speaker phone that works in this room.

"THE COURT: Okay. I'm going to—Miss Hoffman, if you'd put Mr. Johnson back on the phone, I'm going to tell him what—he heard your response, but I'm going to tell him what my questions were."

Although the district court indicated it did not need any additional testimony from Hoffman, the court ultimately granted Napolitano's request at this point to ask his own series of questions, which based on our review of the transcript were noticeably leading.

"MR. NAPOLITANO: . . . Your Honor, it might be helpful to clarify for purposes of the record on appeal. As to—Ms. Hoffman, you served that letter on or about the date of that letter, which was April 30th, 2013?

"MS. HOFFMAN: It would have been around that point in time—and at that point in time Mr. Voelker was also turning stuff over to his administrative assistant, James, and stuff was brought over to Issac [*sic*] Ray through the facility mail. And Mr. Voelker and James are no longer working here.

"MR. NAPOLITANO: Is it fair to say that the letter would have been served within three days of that date?

"MS. HOFFMAN: Yes sir.

"MR. NAPOLITANO: And Ms. Hoffman, was the procedure you just described the normal procedure at that point in time for delivery to the Respondent?

"MS. HOFFMAN: Yes, sir.

"MR. NAPOLITANO: Okay. It is in your policy 7.1 and you say at least at that time you were the individual responsible to deliver the grievance response from the APD—the Acting Program Director to the patient?

"MS. HOFFMAN: Yes, myself and Mr. Limon, but it would have been mostly me, as Mr. Limon was ill.

"THE COURT: Okay. Any other questions for Ms. Hoffman, Mr. Napolitano?

"MR. NAPOLITANO: No, Your Honor.

"THE COURT: Okay. Ms. Hoffman, would you please put Mr. Johnson back on the phone and I'll tell him—one thing I'm going to ask is if he wants to ask any additional questions for the record, and so that's probably going to involve some handing the phone back and forth.

"MS. HOFFMAN: Oh, okay. That's fine.

"THE COURT: Okay.

"MS. HOFFMAN: Thank you. Hold on just a moment.

"THE COURT: Yes. Mr. Johnson, I know you were not able to hear the questions I asked and Mr. Napolitano asked a couple of questions, but were you able to hear the responses that Ms. Hoffman was giving to those questions?

"MR. JOHNSON: Yes, I'm not sure how they related to the questions.

"THE COURT: Okay. I'm going to tell you now what the questions were.

"MR. JOHNSON: Okay.

"THE COURT: The specific question was whether Ms. Hoffman had any recollection about delivering this correspondence of April 30th, 2013, from Mr. Voelker to you. And her response was that it was in the course of her employment at the time as the grievance officer that you—that she would—or as hearing officer, that she would make delivery of grievance responses from the administrator to the respective patients involved. She also indicated that she did deliver that response on this occasion and that that delivery would have been undertaken within three business days of April 30th, 2013, the date of the letter. Hello?

"MR. JOHNSON: Yes. I'm trying to think if there was any other—

"THE COURT: I'm trying to summarize her testimony. If there was anything else that Ms. Hoffman actually related to the Court. Mr. Napolitano, do you think that is a correct summary of what she stated?

"MR. NAPOLITANO: I do. I would just for purposes of transparency say that she did indicate that her along with James Limon would have also at times delivered those, but because he was ill for most of that time, that the responsibility fell almost entirely on her.

"THE COURT: Okay. Thank you, that's correct. Now, Mr. Johnson, what I told Ms. Hoffman was that you might have questions for her about this delivery. And that you would be permitted to ask those questions. And because there is no speaker phone, it

10

would probably involve the two you handing the phone back and forth for you to ask the question and her to then respond.

"MR. JOHNSON: Considering that she was the one that served it directly to me, if it had been served at all, it was obviously sent through the mail. I don't have any questions of her other than the ones I've already asked her. I asked her to check the records and I asked her what her findings were when I asked her to check the records and find out if this had actually—had actually gone through the process.

"THE COURT: Okay. And she did indicate that, Mr. Johnson, and I think you would have heard that part of her response?

"MR. JOHNSON: I did. Sometimes these were mailed and they came to the unit and she—it was in her job to retrieve them and serve them. That would be correct. And had the record—if I were to be able to get a copy of them—I can't get a copy. I asked them for a copy—they wouldn't give me the mail log that logs all the mail that's received. And the mail logs will show that I've never received this letter. Never received it, never signed for it.

. . . .

"THE COURT: . . . [W]hat I have before me is evidence from the officer at SPTP that it is a part of her employment, she is required to deliver information to residents.

"The evidence available to the Court on the record this morning is that she did so within three business days of the date of Mr. Voelker's letter on April 30th, 2013.

. . . .

"Unfortunately, it is clear from the provision of K.S.A. 60-1501(c) that the filing within 30 days of the time that an action become final is jurisdictional. . . .

"On that basis the Court would find that it is appropriate for this action to be dismissed for lack of jurisdiction."

The transcript from the telephone hearing reflects that the court was presented with a dispute in material fact between the parties that had to be resolved in order to rule on the pending motion to dismiss. For his part, Johnson testified that (1) he appealed the grievance officer's response to the SPTP administrative program director on April 22, 2013; (2) he calendared the program director's deadline to respond to his appeal as May 20, 2013; (3) he never received a response from the program director; (4) he mailed

11

his petition for relief on June 19, 2013, which necessarily was timely under K.S.A. 2016 Supp. 60-1501(c) given the process for exhaustion of his administrative remedies did not finalize until May 20, 2013; and (5) the court had subject matter jurisdiction to proceed to the merits of his claim for relief.

Through counsel, KDADS agreed that Johnson appealed the grievance officer's response to the SPTP administrative program director on April 22, 2013, and did not appear to dispute that the program director's deadline to respond to his appeal as May 20, 2013. KDADS argued, however, that the court did not have subject matter jurisdiction to proceed to the merits of Johnson's claim for relief based on the following testimony counsel elicited from Hoffman at the hearing: (1) She was the individual primarily responsible for delivering grievance responses from the program director to the patients who filed the grievance, and (2) she served the program director's response letter to Johnson within 3 days of April 30, 2013, which was the date that appeared on the face of the letter.

The district court held it did not have subject matter jurisdiction to proceed to the merits of Johnsons' petition based on the following findings: Hoffman gave the program director's response letter to Johnson on or around April 30, 2013, Johnson had 30 days from that date to file a timely petition under the provisions of K.S.A. 2016 Supp. 60-1501(c), and Johnson filed his petition on June 26, 2013, which was 27 days beyond the May 30, 2013, deadline. As expressly stated in the journal entry and the transcript of proceedings, the court based its ruling not just on the pleadings filed, but on the evidence and testimony presented at the telephone hearing. In doing so, the court made credibility findings. For all of these reasons, we necessarily conclude that the court's ruling was not a summary dismissal. As such, Johnson was legally entitled to have counsel represent him at the January 8, 2015, hearing. See *Merryfield*, 44 Kan. App. 2d at 826 (constitutional principles of due process require the court to appoint counsel for a civilly

12

committed sexual predator filing a K.S.A. 60-1501 petition if the claims asserted in the petition are not subject to summary dismissal).

Because Johnson was entitled to counsel at the hearing on KDADS's motion to dismiss, we reverse the district court's judgment, direct that counsel be appointed to represent Johnson, and remand the case for further proceedings.

Reversed and remanded with directions.